# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

WILLIAM WILSON,

            Plaintiff,

     v.

BRADLEY BOOHER, *et al*.,

           Defendants.

No. 4:20-CV-00682

(Chief Judge Brann)

## MEMORANDUM OPINION

### SEPTEMBER 15, 2021

On April 24, 2020, Plaintiff William Wilson, a Pennsylvania state inmate, currently confined in the State Correctional Institution, Frackville, Pennsylvania ("SCI-Frackville"), filed the above captioned civil rights action pursuant to 42 U.S.C. § 1983.[1]  The action proceeds via an amended complaint, filed on September 14, 2020.[2] The named Defendants are Erin Brown, Director of the Office of Population at SCI-Camp Hill, and the following employees at the Benner Township State Correctional Institution ("SCI-Benner"), Bellefonte, Pennsylvania, Plaintiff's former place of confinement: Superintendent Scott Klingfelter; Deputy Superintendent Bradley Booher; Program Manager Jennifer Rossman; Major Curtis Grice; RHU Captain W.P. Foster; Security Lieutenants Kauffman and

---

[1]  Doc. 1.
[2]  Doc. 18.

Wian.[3]  Wilson claims that the named Defendants are responsible for his assault at SCI-Benner by two brothers of the victim in his criminal case.[4]

Presently pending is Defendants' partial motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).[5]  For the reasons set forth below, Defendants' motion to dismiss the amended complaint will be granted in part, and denied in part.

## I.    STANDARDS OF REVIEW

In rendering a decision on a motion to dismiss, a court should not inquire "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."[6]  The court must accept as true the factual allegations in the complaint and draw all reasonable inferences from them in the light most favorable to the plaintiff.[7]  In addition to considering the facts alleged on the face of the complaint, the court may consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[8]

However, "[t]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."[9]  "Under the

---

[3]  *Id*.
[4]  *Id*.
[5]  Doc. 22.
[6]  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Nami v. Fauver*, 82 F.3d 63, 66 (3d Cir. 1996).
[7]  *See Phillips v. Cty of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008).
[8]  *Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 322 (2007).
[9]  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (stating "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps.  First, it must 'tak[e] note of the elements [the] plaintiff must plead to state a claim.' *Iqbal*, 556 U.S. at 675, 129 S.Ct. 1937. Second, it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' *Id.* at 679, 129 S.Ct. 1937.  *See also Burtch v. Milberg Factors, Inc*., 662 F.3d 212, 224 (3d Cir.2011) ("Mere restatements of the elements of a claim are not entitled to the assumption of truth." (citation and editorial marks omitted)).  Finally, '[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.' *Iqbal*, 556 U.S. at 679, 129 S.Ct. 1937."[10]  Deciding whether a claim is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[11]

Because Wilson proceeds *pro se*, his pleading is liberally construed and his complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."[12]

---

[10]   *Connelly v. Lane Const. Corp*., 809 F.3d 780, 787 (3d Cir. 2016) (footnote omitted).
[11]   *Iqbal*, 556 U.S. at 681.
[12]   *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted).

## II.   ALLEGATIONS IN THE AMENDED COMPLAINT

Wilson, who was convicted in the Montgomery County Court of Common Pleas, was initially transferred to the Phoenix State Correctional Institution, Collegeville, Pennsylvania, where he claims he was assaulted by a brother of the victim in his criminal case.[13]  He "was then placed in the restricted housing unit pending transfer to a facility where the victim's family members were not housed."[14]  He alleges that "at that point, the PA Department of Corrections was placed on notice that the Plaintiff required separations from his victims family members, who were currently incarcerated in the DOC."[15]

Wilson claims that he was "then transferred to SCI-Camp Hill for classification purposes, where it was the responsibility of Director Erin Brown to oversee the process of classification of the Plaintiff and to oversee the process of choosing which jail the Plaintiff would be sent to [to] ensure that he as not subject to retaliatory assaults from family members of his victim."[16]  Plaintiff states that he was "classified to SCI-Benner, a jail that housed two brothers of his victim (unbeknownst to him), and then transferred there on January 24, 2019 and placed in general population at the institution."[17]

---

[13]  Doc. 18.
[14]  *Id.*
[15]  *Id.*
[16]  *Id.*
[17]  *Id.*

On January 28, 2019, Plaintiff states that he was "escorted to the restricted housing unit by four officers and placed in administrative custody and issued an 'other report' (No. D269912) pursuant to DC-ADM 802[18]."[19]

On January 29, 2019, Wilson was "personally interviewed by Defendants Booher, Klinefelter, Rossman, Grice and Foster collectively known as the Program Review Committee (PRC)", at which time Wilson "stated that he did not know why he was placed in the restricted housing unit and was issued a report that stated that he was considered to be in danger from other inmates at SCI-Benner."[20]

The PRC conducted Administrative Reviews of Wilson's Administrative Custody status on February 5, February 12, February 19, and February 26, 2019.[21] Each time, the PRC indicated that "Inmate Wilson was placed in AC status due to being in danger from others" and recommended that he "continue AC status pending Security Office review and recommendation."[22] During that timeframe

---

[18] DC-ADM 802 is the Department of Corrections Policy Statement on "Administrative Custody Procedures, which states, in pertinent part:
> 1. A general population inmate may be assigned AC status and placed in a Security Level (SL) 5 Housing Unit, including a Psychiatric Observation Cell (POC), by order of the Shift Commander and/or by order of a psychiatrist or a Certified Registered Nurse Practitioner – Psychiatric Service (PCRNP) for the following reason(s):
>> a.  the inmate is in danger from some person(s) in the facility and cannot be protected by alternate measures and/or the inmate is a danger to some person(s) in the facility and the person(s) cannot be protected by alternate measures
*See* DC-ADM 802, Administrative Custody Procedures Manual at § 1(B)(1)(a).
[19] *Id*.
[20] *Id*.
[21] Doc. 18-1 at 2, 3, 6, 8.
[22] *Id*.

Wilson submitted three Inmate's Request to Staff Member, inquiring as to why he is being housed in the RHU on AC status and noting that he does not get "treated equally as others in population" and that it "seems much like a punishment to [him]."[23] Defendant Rossman responded to each request, stating that Wilson's "802 is for danger to/from others" and "is not a form of punishment."[24]

Plaintiff states that he "was interviewed by Defendants Lt. Kauffman and Lt. Wian, where the Defendants told Plaintiff that they did not find any credible threats to Plaintiff's safety" and "based on the interview with Defendants, the Plaintiff was released back into general population at Benner on March 6, 2019."[25]

On March 9, 2019 "between the hours of 5:10 pm and 6:00 pm, the Plaintiff was chased by at least four individuals from the dining hall to the education building where he was violently assaulted."[26]  The Plaintiff "was able to escape this assault only to be chased further down the walkway and assaulted for a second time."[27] As a result of these assaults, Wilson "suffered physical and psychological injuries and still to this day suffer with these issues."[28]

---

[23]   Doc. 18-1 at 4, 5, 7.
[24]   *Id.*
[25]   Doc. 18 at 8.
[26]   Doc. 1.
[27]   *Id.*
[28]   *Id.*

On April 24, 2020, Wilson filed the instant action in which he seeks compensatory and punitive damages for Defendants' failure to protect him.[29] Specifically, Plaintiff claims that "Defendants Booher, Klinefelter, Rossman, Grice, Foster, Kauffman and Wian were all aware that credible threats existed against the Plaintiff and that there was a distant possibility that if he were housed in general population at SCI-Benner, an assault would occur against him."[30]  He alleges that "Defendants Kauffman and Wian failed to provide the Plaintiff with any information concerning threats that were forward to the security office, and failed to conduct an adequate investigation as to wheather (sic) or not the Plaintiff was in actual danger of being assaulted."[31] Wilson claims that "the Defendant released the Plaintiff into general population on March 6, 2019, knowing the danger, and the Plaintiff was assaulted within 36 hours, by direct family members of the Plaintiff's victim in his criminal case."[32]

## III.   DISCUSSION

The Eighth Amendment's prohibition of cruel and unusual punishment imposes duties on prison officials to provide prisoners with the basic necessities of life, such as food, clothing, shelter, sanitation, medical care and personal safety.[33]

---

[29]   *Id.*
[30]   *Id.*
[31]   *Id.*
[32]   *Id.*
[33]   *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Helling v. McKinney*, 509 U.S. 25, 31 (1993).

Under *Farmer*, an inmate must surmount the high hurdle of showing that a prison official actually knew or was aware of a substantial risk to inmate safety and deliberately disregarded that risk.[34]  This requirement of actual knowledge means that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."[35]

Prison officials violate an inmate's right to be free from cruel and unusual punishment when, through intentional conduct or deliberate indifference, they subject the inmate to violence at the hands of another prisoner.[36]  Mere negligent conduct that leads to serious injury of a prisoner by a prisoner does not expose a prison official to civil rights liability.[37]  The victim's custodial officials are exposed to civil rights liability only when if one "knows or should have known of a sufficiently serious danger to [the] inmate."[38]

The United States Court of Appeals for the Third Circuit has "stress[ed], however, that in constitutional context 'should have known' is a phrase of art with a meaning distinct from its usual meaning in the context of the law of torts."[39]  As

---

[34]  *Beers-Capitol v. Whetzel*, 256 F. 3d 120, 125 (3d Cir. 2001).

[35]  *Farmer*, 511 U.S. at 837.

[36]  *Young v. Quinlan*, 960 F.2d 351, 361 (3d Cir. 1992); *Riley v. Jeffes*, 777 F.2d 143, 147 (3d Cir. 1985).

[37]  *Davidson v. Cannon*, 474 U.S. 344, 347-48 (1986).

[38]  *Young*, 960 F.2d at 361; *see also Martin v. White*, 742 F.2d 469, 474 (8th Cir. 1984).

[39]  *Young*, 960 F.2d at 361.

our Court of Appeals has explained, the phrase, "does not refer to a failure to note a risk that would be perceived with the use of ordinary prudence."[40]  Instead, "[i]t connotes something more than a negligent failure to appreciate the risk ..., though something less than subjective appreciation of that risk."[41]  Moreover, "the risk of ... injury must be not only great, but also sufficiently apparent that a lay custodian's failure to appreciate it evidences an absence of any concern for the welfare of his or her charges."[42]  Consequently, liability only attaches when there is a "pervasive risk of harm to inmates from other prisoners, ... and that the prison officials have displayed 'deliberate indifference' to the danger."[43]

At the outset, Defendants concede that, for purposes of this motion to dismiss, Wilson has sufficiently alleged that his incarceration in general population with the family members of the victim of his criminal case posed a substantial risk of harm and that he has alleged sufficient facts to plausibly state a claim for deliberate indifference against Defendants Wian and Kauffman.[44]  The remaining Defendants, however, argue that Wilson's amended complaint fails to set forth sufficient factual material from which subjective knowledge of the condition posing a substantial risk of harm may be inferred.[45]  The Court disagrees.

---

[40]   *Colburn v. Upper Darby Township*, 946 F.2d 1017, 1025 (3d Cir. 1991).
[41]   *Id*.
[42]   *Id*.
[43]   *Riley*, 777 F.2d at 147.
[44]   Doc. 26 at 10,11.
[45]   *Id*.

Plaintiff's amended complaint, and attached PRC reviews, reveal that the PRC was aware that Plaintiff was housed at SCI-Benner under conditions posing a substantial risk of harm and their recommendation was to continue Plaintiff in Administrative Custody status, pending Security Office review and recommendation.  However, while the amended complaint and attached exhibits demonstrate knowledge on behalf of the PRC, there are no allegations or exhibits which support a finding that the PRC was deliberately indifferent to Plaintiff's substantial risk, which resulted in injury to the Plaintiff.  Accordingly, Defendants Booher, Klinefelter, Rossman, Grice, and Foster, all members of the PRC, are entitled to dismissal.

With respect to Defendant Erin Brown, Director of the Office of Population Management at SCI-Camp Hill, Wilson claims that after being assaulted at SCI-Phoenix by a brother of the victim in his criminal case, he was transferred to SCI-Camp-Hill for classification purposes, "where it was the responsibility of Director Erin Brown to oversee the process of classification of the Plaintiff and to oversee the process of choosing which jail the Plaintiff would be sent, to ensure that he was not subject to retaliatory assaults from family members of his victim."[46]  Plaintiff claims that he was transferred to SCI-Benner, a facility which housed two brothers of the victim in his criminal case.[47]  Wilson concludes from this that "the actions of

---

[46]   Doc. 18 at 7.
[47]   *Id*.

Defendant Brown "in failing to properly investigate the Plaintiff, caused the Plaintiff to be classified to the same state prison where two brothers of his victim on his criminal case resided at."[48]

Keeping in mind that *pro se* complaints should be construed liberally, this Court will allow Plaintiff's failure to investigate and to protect claims against Defendant Director Brown, since, at this juncture in the litigation, a question of fact remains as to whether Defendant Brown knew that Wilson faced an excessive risk of harm by being placed in SCI-Benner and then disregarded that risk, resulting in injury to the Plaintiff.

## IV.    CONCLUSION

Based on the foregoing, Defendants' partial motion to dismiss the amended complaint will be granted as to the dismissal of Defendants, Booher, Klinefelter, Rossman, Grice, and Foster.  Defendants' partial motion to dismiss Defendant Director Erin Brown will be denied.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

[48]  *Id.* at 9.